# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| CREIG J. MENARD, ET AL. | CIVIL ACTION NO. 17-0019 |
| VERSUS | MAGISTRATE JUDGE WHITEHURST |
| ORKIN, LLC d/b/a ORKIN | BY CONSENT OF THE PARTIES |

## MEMORANDUM RULING

Before the Court are the following motions filed by defendant Orkin, LLC ("Orkin"): (1) Motion For Partial Summary Judgment on Contractual Limitation of Liability [Rec. Doc. 37]; and (2) Motion for Partial Summary Judgment on Plaintiffs' Negligence Claims [Rec. Doc. 39]. The plaintiffs oppose both motions in a single brief [Rec. Doc. 46], and Orkin filed a Reply brief [Rec. Doc. 49]. For the following reasons, Orkin's motions are GRANTED.

### *I. Factual Background and Procedural History*

The instant lawsuit seeks to recover money from defendant Orkin for damages to a residential dwelling due to termites. The following facts are undisputed:

- On or about January 1, 1979, Orkin and Jim Fuselier entered into an "Orkin Exterminating Company, Inc. Subterranean Termite Agreement" ("Agreement") on the property located at 2503 Frankie Street, Abbeville, Louisiana.

- Under the provisions of the Agreement, Orkin issued to Jim Fuselier a "Lifetime Repair Guarantee ("LR Guarantee")."

- Pursuant to the terms of the LR Guarantee, Orkin agreed to pay for the repair of any new Subterranean Termite damage occurring after the date of original treatment for an amount not greater than $100,000.00. The Agreement states:

   SUBJECT TO THE GRAPH AND SPECIFICATIONS AND THE GENERAL TERMS AND CONDITIONS, ORKIN WILL ISSUE A SPECIAL TOTAL PROTECTION LIFETIME SUBTERRANEAN GUARANTEE WHICH OBLIGATES ORKIN, AT NO EXTRA COST, TO RE-TREAT AND REPAIR THE STRUCTURE AND CONTENTS TO REMEDY ANY NEW DAMAGE CAUSED BY SUBTERRANEAN TERMITES, PROVIDED IT IS ESTABLISHED THAT SUCH DAMAGE WAS CAUSED BY SUBTERRANEAN TERMITES AFTER THE DATE OF INITIAL TREATMENT, AND THAT AT THE TIME OF DISCOVERY OF THE NEW DAMAGE, THE DAMAGED AREAS ARE INFESTED WITH LIVE SUBTERRANEAN TERMITES, AND WILL BE RESPONSIBLE FOR SUCH REPAIRS ONLY WHEN MADE WITH ORKIN'S APPROVAL AND UNDER ORKIN'S SUPERVISION AND CONTROL. ***THE BUYER UNDERSTANDS THAT ORKIN'S LIABILITY FOR SUCH REPAIRS IS LIMITED TO STRUCTURAL AND CONTENTS DAMAGE AND SHALL IN NO EVENT EXCEED $100,000.00 AGGREGATE LOSS.***[1]

- On the same date, Orkin and Jim Fuselier also entered into a Wood Infesting Organism Agreement on the property located at 2503 Frankie Street, Abbeville, Louisiana. The Moisture Control Contract obligated Orkin to apply a moisture barrier underneath the home and to re-treat the home to prevent fungus or decay.

---

[1] *See* Attachment 1 to Exhibit A, Affidavit of Robin M. Alexander, attached to Orkin's motion for partial summary judgment. [Rec. Doc. 37-3] (emphasis added).

- In 1992, the Agreement was transferred to Creig J. Menard after he purchased the property.

- In April of 1999, a carpenter found termite damage in the plaintiffs' home and a claim was made by the plaintiffs under the Agreement.

- Orkin evaluated the termite damage and subsequently agreed to pay for repairs in the amount of $14,147.00.

- In October 2014, additional Subterranean Termite infestation was discovered in plaintiffs' home, and plaintiffs made a second termite damage claim.

- Orkin responded by performing re-treatment to the property in accordance with the terms of the Agreement, and also agreed to pay for additional repairs in successive amounts of $10,000.00, $10,000.00, and $15,000.00 based on what it determined to be the scope of termite damage repair.

- To date, Orkin has made payments to the plaintiffs totaling $49,147.00.[11]

On October 2, 2015, the plaintiffs filed suit against Orkin in the Fifteenth Judicial District Court for the Parish of Vermilion, State of Louisiana. In their original Petition for Damages, plaintiffs allege they have sustained damages due to Orkin's alleged failure to "properly treat the plaintiffs' home before it had any termites, in failing to perform its services in a good workmanlike manner, and being negligent in failing to properly inspect the house during its normal inspections in failing to see what it should have seen and done what it should have done pursuant

to its contract." Plaintiffs' alleged damages include, but are not limited to, inconvenience, inability to enjoy the use of their home, anxiety, medical expenses, financial loss, repair costs, and interference with family life.

Orkin removed the matter to this Court on January 6, 2017 [Rec. Doc. 1]. In the pending motions, Orkin seeks an order limiting plaintiffs' recovery to $50,853.00, as well as dismissal of the plaintiffs' negligence claim.

## II. *Summary Judgment Standard*

Summary judgment will be granted only if the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed R. Civ P. 56(c); *Brown v. City of Houston*, 337 F.3d 539, 540–41 (5th Cir.2003). A material fact is a fact which, under applicable law, may alter the outcome of the suit. *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 271 F.3d 624, 626 (5th Cir.2001). A dispute is genuine when a reasonable finder of fact could resolve the issue in favor of either party, based on the evidence before it. *See Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir.2013). "The moving party bears the burden of demonstrating that there exists no genuine issues of material fact." *In re Vioxx Prods. Liab. Litig.*, 501 F.Supp.2d 776, 781 (E.D.La.2007). When considering a motion for summary judgment, the Court must

"review the facts drawing all inferences most favorable to the party opposing the motion." *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 137 (5th Cir.2004). The non-moving party must then go beyond the pleadings and "identify specific evidence in the record and ... articulate the precise manner in which that evidence supports his or her claim." *Fuentes v. Postmaster Gen. of U.S. Postal Serv.*, 282 F. App'x 296, 300 (5th Cir.2008). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir.2002).

### III. Analysis

**A. Motion for Partial Summary Judgment on Contractual Limitation of Liability [Rec. Doc. 37]**

Under the provisions of the Agreement originally issued to Jim Fuselier and acquired by the Menards in 1992, Orkin agreed to pay for the repair of any new Subterranean Termite damage occurring after the date of original treatment for an amount not greater than $100,000.00, to wit:

> SUBJECT TO THE GRAPH AND SPECIFICATIONS AND THE GENERAL TERMS AND CONDITIONS, ORKIN WILL ISSUE A SPECIAL TOTAL PROTECTION LIFETIME SUBTERRANEAN GUARANTEE WHICH OBLIGATES ORKIN, AT NO EXTRA COST, TO RE-TREAT AND REPAIR THE STRUCTURE AND CONTENTS TO REMEDY ANY NEW DAMAGE CAUSED BY SUBTERRANEAN TERMITES, PROVIDED IT IS ESTABLISHED THAT SUCH DAMAGE WAS CAUSED BY SUBTERRANEAN

TERMITES AFTER THE DATE OF INITIAL TREATMENT, AND THAT AT THE TIME OF DISCOVERY OF THE NEW DAMAGE, THE DAMAGED AREAS ARE INFESTED WITH LIVE SUBTERRANEAN TERMITES, AND ORKIN WILL BE RESPONSIBLE FOR SUCH REPAIRS ONLY WHEN MADE WITH ORKIN'S APPROVAL AND UNDER ORKIN'S SUPERVISION AND CONTROL. ***THE BUYER UNDERSTANDS THAT ORKIN'S LIABILITY FOR SUCH REPAIRS IS LIMITED TO STRUCTURAL AND CONTENTS DAMAGE AND SHALL IN NO EVENT EXCEED $100,000.00 AGGREGATE LOSS.***

In April of 1999, a carpenter found termite damage in the plaintiffs' home and a claim was made by the plaintiffs under the Agreement. Orkin evaluated the termite damage and subsequently agreed to pay for repairs in the amount of $14,147.00. In October 2014, additional Subterranean Termite infestation was discovered in plaintiffs' home and plaintiffs made a second termite damage claim. Orkin responded by performing re-treatment to the property in accordance with the terms of the Agreement, and also agreed to pay for additional repairs. The parties were initially unable to come to an agreement as to how much was owed for the termite damage repairs. Nevertheless, Orkin argues it attempted to work with the plaintiffs, making payments of $10,000.00, $10,000.00, and $15,000.00 based on what it determined to be the scope of termite damage repair. In the instant motion, while not admitting it owes anything beyond what has already been paid to the plaintiffs, Orkin seeks to limit its liability under the Agreement (if any) to no more than $50,853.00.

Under Louisiana law, "[c]ontracts have the effect of law for the parties …." La. Civ. Code Ann. art. 1983. "[C]ourts are bound to give legal effect to all such contracts according to the true intent of all the parties." *Pendleton v. Shell Oil Co.*, 408 So. 2d 1341, 1342 (La. 1982). The Louisiana Supreme Court has further stated:

> "Contracts have the effect of law for the parties" and the "[i]nterpretation of a contract is the determination of the common intent of the parties."10 The reasonable intention of the parties to a contract is to be sought by examining the words of the contract itself, and not assumed. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." Common intent is determined, therefore, in accordance with the general, ordinary, plain and popular meaning of the words used in the contract. "Accordingly, when a clause in a contract is clear and unambiguous, the letter of that clause should not be disregarded under the pretext of pursuing its spirit, as it is not the duty of the courts to bend the meaning of the words of a contract into harmony with a supposed reasonable intention of the parties." However, even when the language of the contract is clear, courts should refrain from construing the contract in such a manner as to lead to absurd consequences. Most importantly, a contract "must be interpreted in a common-sense fashion, according to the words of the contract their common and usual significance." Moreover, a contract provision that is susceptible to different meanings must be interpreted with a meaning that renders the provision effective, and not with one that renders it ineffective. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole.

*Clovelly Oil Co., LLC v. Midstates Petroleum Co., LLC*, 112 So. 3d 187, 192 (La. 3/19/13) (internal citations omitted).

Louisiana courts have routinely upheld limitations on liability in pest control

7

contracts. *See, e.g., Pothier v. Barber Laboratories, Inc.*, 79 So.2d 481 (La. 1955) (original contract expressly provided that the pest control operator would not be responsible for damage done to the building or its contents by termites, therefore Louisiana Supreme Court held pest control operator owed no obligation to pay for the cost of repairing termite damage); *McCrory v. Terminix Service Co.*, 609 So.2d 883 (La. App. 4th Cir. 1992) (where agreement limited the termite contractor's liability for property damage to $5,000; Louisiana Fourth Circuit affirmed the trial court's ruling granting partial summary judgment, finding contract limited the termite contractor's liability to the amount stated); *Johnson v. Orkin Exterminating Co.*, 746 F. Supp. 627 (E.D. La. 1990) (in case applying Louisiana law, court upheld validity of limitations of liability in pest control contract which limited liability to re-treatment; court granted pest control contractor's motion for summary judgment based on this limitation); *Orkin Exterminating Company, Inc. v. Stevens*, 203 S.E.2d 587 (Ga. App. 1973); *Worth v. Orkin Exterminating Company, Inc.*, 234 S.E.2d 802 (Ga. App. 1977); *Wilcher v. Orkin Exterminating Company, Inc.*, 244 S.E.2d 101 (Ga. App. 1978); and *Orkin Exterminating Company, Inc. v. Walters*, 466 N.E.2d 55 (Ind. App. 1984) (abrogated on other grounds by *Mitchell v. Mitchell*, 695 N.E.2d 920 (Ind. 1998). *Jones v. Orkin Exterminating Company*, No. 92-0440, 1992 WL 91930 (E.D. La. 1992) (court granted summary judgment in favor of pest control company in an

action brought by a homeowner seeking recovery for termite damage to property where the contract limited liability to re-treatment only); *Horn v. Orkin Exterminating Company, Inc.*, No. 94-233, 1995 WL 250434 at *1 (E.D. La. 1995) ("The clear terms of the contract in the present case require Orkin only to retreat the property with liquid chemicals").

In response to the motion, the plaintiffs argue summary judgment is not appropriate because there are genuine issues of material fact regarding whether Orkin acted with gross fault or negligence, which plaintiffs argue would render the limitation of liability clause in the contract null and unenforceable under Article 2004 of the Louisiana Civil Code.[2]

As an initial matter, this Court notes the plaintiffs have not pled a claim for gross negligence on the part of Orkin, and the first time such a claim is mentioned by the plaintiffs is in their opposition to Orkin's motion for partial summary judgment. Under Louisiana law, gross negligence is defined as willful, wanton and reckless

---

[2] Article 2004 states:

Any clause is null that, in advance, excludes or limits the liability of one party for intentional or gross fault that causes damage to the other party.

Any clause is null that, in advance, excludes or limits the liability of one party for causing physical injury to the other party.

La. Civ. Code Ann. art. 2004

conduct that falls between intent to do wrong and ordinary negligence. *Houston Exploration Co. v. Halliburton Energy Services, Inc.,* 269 F.3d 528, 531 (5th Cir. 2001). "Gross negligence is substantially and appreciable higher in magnitude than ordinary negligence." *Id., citing Orthopedic & Sports Injury Clinic v. Wang Laboratories, Inc.,* 922 F.2d 220, 224 n. 3 (5th Cir. 1991). *See also Hendry Corp. v. Aircraft Rescue Vessels*, 113 F.Supp. 198, 201 (E.D. La. 1953) (gross negligence defined as the "entire absence of care"); *Ambrose v. New Orleans Police Department Ambulance Service,* 639 So.2d 216, 219 (La. 1994) (accord); *State v. Vinzant,* 7 So.2d 917, 922 (La. 1942) (gross negligence defined as the "want of even slight care and diligence"). At least one Louisiana court has stated that one is grossly negligent when he "has intentionally done an act of unreasonable character in reckless disregard of the risk known to him, or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow." *See Cates v. Beauregard Elec. Co-op., Inc.,* 316 So.2d 907, 916 (La. App. 3rd Cir. 1975), *aff'd,* 328 So.2d 367 (La. 1976). Mere inadvertence or honest mistake does not amount to gross negligence. *Orthopedic & Sports Injury Clinic v. Wang Laboratories, Inc,* 922 F.2d 220, 224 n. 3 (5th Cir. 1991).

In their petition, the plaintiffs asserted a claim of ordinary negligence against Orkin. That claim was factually based on an alleged failure to properly inspect the

house during its normal inspections and a failure to see what Orkin should have seen and done what it should have done pursuant to its contract. Since the filing of the original petition until the filing of their opposition brief herein, the plaintiffs have not mentioned the terms "gross negligence" or "wanton" or "willful" as it relates to Orkin's alleged conduct. This case is now nearly three years old, and discovery has been complete for months. This Court finds the plaintiffs have not properly pled a claim of gross negligence and cannot now raise entirely new allegations to defeat summary judgment at this juncture.

In the instant case, the Agreement is clear, unambiguous, and susceptible to only one interpretation. The parties to the Agreement agreed that Orkin's aggregate liability would be limited to $100,000.00. It is undisputed that Orkin has already made payments to the plaintiffs totaling $49,147.00. Even if the plaintiff had properly alleged gross negligence before now, summary judgment is still warranted because Plaintiffs have failed to set forth any evidence of gross negligence on the part of Orkin. Indeed, Orkin has treated the home for termite damage and made payments to the plaintiffs in the amount of $49,147.00. There are no genuine issues of fact regarding the foregoing, and the plaintiffs do not dispute the amounts paid heretofore. Nor do the plaintiffs raise any other argument that the limitation of liability provision in the contract is invalid or unenforceable. Therefore, Orkin's maximum contractual

liability must be limited to $50,853.00 in structural and contents damage in this case.

**B.    Motion for Partial Summary Judgment on Plaintiffs' Negligence Claims [Rec. Doc. 39]**

Orkin also moves to dismiss the negligence claim alleged by the plaintiffs on grounds the only relief the plaintiffs are entitled to, if any, is relief that flows from the contract between the parties.  In its motion, Orkin points out that plaintiffs have alleged breaches of the applicable termite service agreement including (a) failing to properly treat Plaintiffs' house before it had any termites; and (b) failing to perform its services in a good workmanlike manner. In addition to their breach of contract claims, the plaintiffs have also asserted claims of "negligence" against Orkin, including being negligent in (a) failing to properly inspect the house during its normal inspections, and (b) failing to see what it should have seen and done what it should have done pursuant to its contract. However, plaintiff's purported "negligence" claim arises solely from Orkin's alleged non-performance and/or breach of its *contractual obligations*.  Plaintiffs have not alleged that Orkin engaged in any form of tortious conduct that is separate and distinct from its contractual obligation to inspect and treat for termites.    In their opposition brief, the plaintiffs do not appear to oppose this particular motion, and do not appear to challenge Orkin's argument that the only cause of action available to the plaintiffs is for breach of contract. As such, plaintiffs

do not have a cause of action for negligence, gross negligence, or negligent misrepresentation, and these claims should be dismissed.

Under Louisiana law, "[c]ontractual damages arise out of the breach of a special obligation contractually assumed, and delictual damages arise out of the violation of a duty owed to all persons." *Strahan v. Sabine Retirement & Rehab. Center, Inc.*, 981 So.2d 287, 291 (La. App. 3rd Cir. 2008), *citing Washington Nat'l Ins. Co. v. Arnaud*, 676 So.2d 1130 (La. App. 3rd Cir.), *writ denied*, 681 So.2d 1263 (La. 1996). In *Norwood v. Mobley Valve Servs., Inc.*, 144 So.3d 1143, 1148 (La. App. 2nd Cir. 2014, 144 So. 3d 1143, 1148, *writ granted in part*, 238 So.3d 974 (La. 2015), the court stated:

> The nature of the duty breached determines whether an action is in tort or contract. *Roger v. Dufrene*, 613 So.2d 947 (La.1993); *Kroger Co. v. L.G. Barcus & Sons, Inc.*, 13 So.3d 1232 (La. App. 2nd Cir. 2009). The distinction between damages *ex contractu* and damages *ex delicto* is that the former flow from the breach of a special obligation contractually assumed by the obligor, whereas the latter flow from the violation of a general duty owed to all persons. *Kroger, supra*; *Trinity Universal Insurance Co. v. Horton*, 756 So.2d 637 (La. App. 2nd Cir. 2000).

Thus, to determine whether a breach is delictual rather than contractual in nature, a court must look at whether the occurrence resulted from violating a duty specifically undertaken by contract or instead resulted from the violation of a general duty owed to all persons. *Strahan*, 981 So.2d at 291-92.

13

In the instant case, the plaintiffs allege they assumed and/or entered into a contract with Orkin to inspect and treat their home for termites. In their petition, plaintiffs allege Orkin is negligent in "failing to properly inspect the house during its normal inspections, and failing to see what it should have seen and done what it should have done ***pursuant to its contract***." Thus, their claim expressly states that the alleged damage was caused by a failure to do something ***pursuant to a contract***. Therefore, it is axiomatic that the damages sought "flow from the breach of a special obligation contractually assumed by" Orkin. Ergo, plaintiffs' cause of action sounds in contract, not tort.

As already discussed in this ruling, in an apparent attempt to provide an additional ground for recovery, the plaintiffs argue – for the first time in their opposition brief – that Orkin was "grossly negligent" in failing to properly inspect the house during its normal inspections, and failing to see what it should have seen and done what it should have done pursuant to its contract. However, as the undersigned has already ruled, a claim for gross negligence has not been properly pled by the plaintiffs in this matter. Furthermore, the plaintiffs have presented no evidence of gross negligence on the part of Orkin.

Considering the foregoing, the undersigned finds the plaintiffs' claim of negligence is not supported by the law and facts in this case, and the negligence claim

is DENIED AND DISMISSED with prejudice. To the extent that the plaintiffs argue they have properly pled a claim for gross negligence, the undersigned is not persuaded that such a claim has been properly pled, and any such claim is also DENIED AND DISMISSED with prejudice.

### *IV. Conclusion*

Thus, for the foregoing reasons, **IT IS ORDERED** that the Motion For Partial Summary Judgment on Contractual Limitation of Liability [Rec. Doc. 37] and Motion for Partial Summary Judgment on Plaintiffs' Negligence Claims [Rec. Doc. 39] for summary judgment filed by Orkin are GRANTED. IT IS ORDERED that the plaintiffs' claims of negligence and gross negligence (to the extent that claim has been properly pled) are DENIED AND DISMISSED WITH PREJUDICE. IT IS FURTHER ORDERED that Orkin's maximum contractual liability is limited to $50,853.00 in structural and contents damage.

Thus done and signed this 16th day of October, 2018 at Lafayette, Louisiana.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE